UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE

SUSAN DAVY-MEMBRENO AKA SUSAN
DAVY,

DEBTOR.

CHAPTER 7

CASE NO. 8-19-74214-ast

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Nicole DiStasio, an associate of the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant") will move this Court as set forth below:

| | |
|---|---|
| JUDGE: | HON.  Alan S. Trust |
| RETURN DATE & TIME: | November 21, 2019 at 10:30 AM |
| COURTHOUSE: | United States Bankruptcy Court<br>Alfonse M. D'Amato U.S. Courthouse<br>290 Federal Plaza<br>Central Islip, NY 11722 |
| RELIEF REQUESTED: | The proposed order will seek to vacate the automatic stay imposed by 11 U.S.C. § 362(a) against subject property generally described as 89 Delaware Avenue, Freeport, NY 11520, pursuant to 11 U.S.C. § 362(d)(1) based upon the total debt due to Movant, resulting in Movant's lack of adequate protection with regard to the subject property. |

19-083817

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, if any, to the relief requested, must be served upon and received by Shapiro, DiCaro & Barak, LLC at their offices at 175 Mile Crossing Boulevard, Rochester, NY 14624 and filed with the Clerk of the United States Bankruptcy Court for the Eastern District of New York at United States Bankruptcy Court, Alfonse M. D'Amato U.S. Courthouse, 290 Federal Plaza, Central Islip, NY 11722 no later than seven (7) days prior to the return date of this motion.

Dated: _____October 14_____, 2019
Rochester, New York

/s/ *Nicole DiStasio*
_____
Nicole DiStasio
Bankruptcy Attorney
Shapiro, DiCaro & Barak, LLC
Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS NOTICE IS REQUIRED BY THE PROVISIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT AND DOES NOT IMPLY THAT WE ARE ATTEMPTING TO COLLECT MONEY FROM ANYONE WHO HAS DISCHARGED THE DEBT UNDER THE BANKRUPTCY LAWS OF THE UNITED STATES.**

TO:     SERVICE LIST

19-083817

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE

SUSAN DAVY-MEMBRENO AKA SUSAN
DAVY,

DEBTOR.

CHAPTER 7

CASE NO. 8-19-74214-ast

## AFFIRMATION IN SUPPORT OF
## ENTRY OF AN ORDER GRANTING
## RELIEF FROM THE AUTOMATIC STAY

Nicole DiStasio, an attorney at law duly admitted to practice before the Courts of the State of New York and the U.S. District Court for the Eastern District of New York, hereby affirms the following to be true under penalty of perjury:

1.    I am an associate with the law firm of Shapiro, DiCaro & Barak, LLC, attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper ("Movant"), a secured creditor of Susan Davy-Membreno aka Susan Davy ("Debtor"), Virginia A. Davy (non-filing "Co-Borrower") and Alexander Membreno (non-filing "Co-Borrower").  As such, I am fully familiar with the facts and circumstances of this case.

2.    I make this Affirmation in support of the within request for an Order Granting Relief from the automatic stay, for cause, pursuant to 11 U.S.C. § 362(d)(1) and (2).

3.    Jurisdiction is conferred on this Court by the provisions of 28 U.S.C. § 1334.  This is a proceeding to terminate and annul the automatic stay and is therefore a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.    Movant is a Secured Creditor of Debtor pursuant to a consolidated note executed by Susan Davy, Virginia A. Davy and Alexander Membreno on August 25, 2005, whereby Susan

Davy, Virginia A. Davy and Alexander Membreno promised to repay the principal amount of $297,500.00 plus interest to CitiMortgage, Inc. (the "Consolidated Note"). To secure the repayment of the Consolidated Note, Susan Davy, Alexander Membreno and Virginia A. Davy executed a mortgage in favor of CitiMortgage, Inc.(the "Consolidated Mortgage"), which was duly recorded as part of a Correction Consolidation Extension and Modification Agreement in the Nassau County Clerk's Office on March 13, 2006 in Liber Book: M 30202, page 266 (the "Consolidation Agreement", the Consolidation Agreement, Consolidated Note and Consolidated Mortgage, collectively, as the "Loan"), encumbering real property located at 89 Delaware Avenue, Freeport, NY 11520 (the "Property"). The Mortgage was transferred from CitiMortgage, Inc. to Federal National Mortgage Association, and said transfer was memorialized by an Assignment of Mortgage executed on February 28, 2014 and recorded March 31, 2014 at Liber Book: M 39599, page 189 (the "First Assignment of Mortgage"). The Mortgage was subsequently transferred to Nationstar Mortgage LLC d/b/a Mr. Cooper, and said transfer was memorialized by an Assignment of Mortgage executed on October 3, 2019 (the "Final Assignment of Mortgage"). A copy of the Consolidation Agreement, including the Consolidated Note and Consolidated Mortgage and Assignments of Mortgage are annexed hereto as **Exhibit "A"**.

5. Upon information and belief, the Debtor herein own(s) the Property.

6. Debtor filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code on or about June 10, 2019.

7. According to the Debtor's Statement of Intention, the Debtor intends to surrender the property. A copy of the Debtor's Chapter 7 Statement of Intentions is annexed hereto as **Exhibit "B"**

8.   The Mortgage was in default on the day the Debtor filed this bankruptcy.  Based upon said default, Movant initiated foreclosure proceedings in the Supreme Court of the State of New York, County of Nassau, under index number 13-007822.  A Summons and Complaint were filed on June 27, 2013.  Copies of the Summons and Complaint are annexed hereto as **Exhibit "C"**. The filing of the instant bankruptcy stayed said action.

9.   Debtor and Co-Borrowers have failed to make mortgage payments due to Movant under the terms of the Loan.  As a result, the Mortgage remains due for the January 1, 2012 payment and each subsequent payment thereafter.

10. The amount of delinquency due as of September 5, 2019 under the Mortgage is as follows:

| | |
|---|---:|
| 90 Defaulted Monthly Payments at $2,952.22 each (January 2012 through June 2019) | $265,699.80 |
| 3 Defaulted Monthly Payments at $3,877.82 each (July 2019 through September 2019) | $11,633.46 |
| Fees & Costs Due (Lump Sum) | $6,206.24 |
| Total Delinquencies | $283,539.50 |

11. A copy of the Relief from Stay-Real Estate and Cooperative Apartments ("Affidavit") is annexed hereto as **Exhibit "D"**.

12. Moreover, in view of the total debt due to Movant and in light of the Debtor's failure to make payments, Movant is no longer adequately protected.  The automatic stay must be vacated for cause pursuant to 11 U.S.C. § 362(d)(1).

13. As set forth in the Affidavit, as of September 5, 2019, the approximate debt due and owing to Movant equals $499,345.10.  The debt is accruing interest at a rate of 4.875% per annum.

14. Based upon the Debtor's Schedule D, the Property has an estimated fair value of approximately $536,000.00.  A copy of Debtor's Schedule D is annexed hereto as **Exhibit "E"**. As indicated in paragraph 13 herein above, the total debt to Movant equals $499,345.10.

15. Movant, according to the laws of the State of New York and the terms and conditions of the Mortgage, desires to continue and/or commence foreclosure proceedings with respect to the Property.

16. The Debtor, Co-Borrowers, Debtor's Attorney, the Chapter 7 Trustee and the Office of the United States Trustee have each been duly served with the within Notice of Motion, Affirmation, Exhibits and proposed Order Vacating Stay, as more fully set forth in the annexed affidavit of mailing.

17. No prior application has been made for the relief requested herein.

18. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

**WHEREFORE,** Movant respectfully requests an Order of this Court vacating the automatic stay for cause pursuant to 11 U.S.C. § 362(d)(1) as to the aforementioned Property; allowing Movant, its agents, assigns or successors in interest, leave to exercise its rights pursuant to the Note and Mortgage including but not limited to foreclose the Mortgage secured by the subject Property; and for such other, further and different relief as to this Court may seem just, proper and equitable.

Dated: _____October 14_____, 2019
　　　　　Rochester, New York

　　　　　　　　　　　　　　　　/s/ *Nicole DiStasio*　　　　　　　
　　　　　　　　　　　　　　　　Nicole DiStasio
　　　　　　　　　　　　　　　　Bankruptcy Attorney
　　　　　　　　　　　　　　　　Shapiro, DiCaro & Barak, LLC
　　　　　　　　　　　　　　　　Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper
　　　　　　　　　　　　　　　　175 Mile Crossing Boulevard
　　　　　　　　　　　　　　　　Rochester, New York 14624
　　　　　　　　　　　　　　　　Telephone: (585) 247-9000
　　　　　　　　　　　　　　　　Fax: (585) 247-7380

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE                                                    CHAPTER 7

SUSAN DAVY-MEMBRENO AKA SUSAN
DAVY,                                                    CASE NO. 8-19-74214-ast


DEBTOR.

---

**ORDER GRANTING RELIEF FROM
THE AUTOMATIC STAY**

**ON** November 21, 2019, the Motion (the "Motion") of Nationstar Mortgage LLC d/b/a

Mr. Cooper, ("Movant") dated October 14, 2019, came before the Court, for relief from the

automatic stay with respect to the collateral known as 89 Delaware Avenue, Freeport, NY 11520.

This Court, having considered the evidence presented and the argument of the parties, and with

good cause appearing therefore, it is hereby

**ORDERED** that the automatic stay, effect pursuant to 11 U.S.C. § 362(a), is hereby

terminated pursuant to 11 U.S.C. § 362(d) as to Movant, its agents, assigns or successors in

interest, so that Movant, its agents, assigns or successors in interest, may take any and all actions

under applicable state law to exercise its remedies against the premises known as 89 Delaware

Avenue, Freeport, NY 11520, and it is further

**ORDERED**  that the Chapter 7 Trustee shall be served with a copy of the referee's report

of sale within (30) days of the report [if applicable], and shall be noticed with any surplus monies

realized from the sale of the Collateral, and it is further

19-083817

**ORDERED**, that all other relief sought in the Motion is denied

# Exhibit "A"

# CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for,
the Notes described in Exhibit A of the New York Consolidation, Extension,
and Modification Agreement dated the same date as this Note.

August 25, 2005          Garden City          New York
[Date]                    [City]              [State]

89 DELAWARE AVE, FREEPORT, NY 11520

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 297,500.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is CitiMortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is
entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly
rate of 4.875          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on October, 2005          . I will
make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on September 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on
that date, which is called the "Maturity Date."

I will make my monthly payments at 1000 Technology Drive, O' Fallon, MO 63304
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,574.39

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a
payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my
Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the
Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my
monthly payment unless the Note Holder agrees in writing to those changes.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for NY Consolidated Note
-850N(NY) (0312)          Form 3233 1/01
VMP Mortgage Solutions (800)521-7291
Page 1 of 3          Initials

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000           % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Page 2 of 3

Form 3205 1/01

ChiMortgage 2.0.0.51 V1

10. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    _____ (Seal)
                               Susan Davy          -Borrower

_____    _____ (Seal)
                               Virginia K Davy     -Borrower

_____    _____ (Seal)
                               Alexander Membreno   -Borrower

Pay to the order of
_____
without recourse on or CitiMortgage, Inc.
_____
Joseph Sims, Vice President
CitiMortgage, Inc.

*[Sign Original Only]*





**NASSAU COUNTY CLERK'S OFFICE**
**ENDORSEMENT COVER PAGE**

Recorded Date: 03-13-2006          Record and Return To:
Recorded Time:  2:28:01 p           CITIMORTGAGE INC
                                    ATTN: DOCUMENT COLLECTION
Liber Book: M  30202                PO BOX 790021 MS 321
Pages From:    266                  ST LOUIS, MO  63179-0021
        To:    296

    Control
    Number:  1803
    Ref #:  CW  104028
  Doc Type: M08  MORTGAGE AGREEMENT

  Refers to: Book: M 29402 Page: 450

Location:                    Section Block    Lot    Unit
HEMPSTEAD (2820)             0054   00458-00  00030

                              Taxes Total            .00
                          Recording Totals        130.00
AAR001                       Total Payment        130.00

  THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                      MAUREEN O'CONNELL
                       COUNTY CLERK

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

Prepared By:
CitiMortgage, Inc.
100 Galleria Officentre
Ste 300
Southfield, MI 48034

---

[Space Above This Line For Recording Data]

## CORRECTION CONSOLIDATION EXTENSION AND MODIFICATION AGREEMENT
## DATED AUGUST 25, 2005 RECORDED ON SEPTEMBER 16, 2005 in Nassau County
## IN LIBER 29402 PAGE 450 CORRECTION MADE ON AGREEMENT TO INCLUDE
## ADDITIONAL SIGNER ON AGREEMENT

### WORDS USED OFTEN IN THIS DOCUMENT
(A)    "Agreement" This document, which is dated March 3, 2005 and exhibits and riders
attached to this document will be called the "Agreement."
(B)    "Borrower," Susan Davy, Subject to a Life Estate of Virginia A. Davy

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 89    Delaware    Ave.,
Freeport, NY 11520
(C)    "Lender." CitiMortgage, Inc.

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists
under the laws of    New York                                            . Lender's
address is  1000 Technology Drive, O' Fallon, MO 63368-2240

(D)    "Mortgages." The mortgages, deeds of trust, or other security instruments and any additional
security instruments and related agreements (such as assignments, extensions, modifications, or
consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."
(E)    "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and
who is entitled to receive the payments I agree to make under this Agreement may be called the "Note
Holder."
(F)    "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured
by the Mortgages, will be called the "Notes."

---

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT - Single Family -    Form 3172 1/01
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                        (rev. 8/01)

(O) "Property." The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

87 DELAWARE AVE
(Street)

FREEPORT          Nassau
(Town)            (County)

NY 11520-
(State and Zip Code)

I promise and I agree with Lender as follows:

## I. BORROWER'S AGREEMENT ABOUT OBLIGATION UNDER THE NOTES AND MORTGAGES

I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made these promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $ 297,500.00                    of this amount, U.S. $ 63,509.61                    was advanced to me (or for my account) immediately prior to this consolidation.

## II. AGREEMENT TO COMBINE NOTES AND MORTGAGES

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages - including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages - have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already being combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

## III. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED NOTE

Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe as Note Holder. I agree to pay the Amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

## IV. AGREEMENT TO CHANGE TERMS OF THE CONSOLIDATED MORTGAGE

Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute to have a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

V.10

(NY 3-SECURITY) (8/01)          Page 2 of 9          Form 3172  3/01 (rev. 8/01)
                                                     Conformed I 3.3.41 V1

**V.  NO SET-OFF, DEFENSES**

I agree that I have no right of set-off or recoupment, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

**VI.  BORROWER'S INTEREST IN THE PROPERTY**

I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

**VII.  WRITTEN TERMINATION OR CHANGE OF THIS AGREEMENT**

This Agreement may only be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

**VIII. OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S OR LENDER'S RIGHTS OR OBLIGATIONS**

If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over any rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

**IX.  LIEN LAW**

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund"; and (B) use those amounts to pay the "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

**X.  TYPE OF PROPERTY**

Check location as applicable.

☐ This Agreement covers real property, principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

By signing this Agreement, Lender and I agree to all of the above.

CitiMortgage, Inc.                                    - Lender

By: _____

William Mason

_____ [Seal]
                                          -Borrower

_____ [Seal]
Virginia A. Ivey                        -Borrower

_____
Alexander Membrene

Form 3172  1/01 (rev. 3/01)
CitiMortgage 2.8.0.01 V1

Page 4 of 7

STATE OF New York)
)ss:
COUNTY OF Nassau)

On March 3, 2006, before me, the undersigned, personally appeared SUSAN DAVY, VIRGINIA A. DAVY AND ALEXANDER MEMBRENO personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

LISA M. WENCHELL
NOTARY PUBLIC, State of New York
No. 01WE6040738
Qualified in Nassau County
Commission Exp September 19, 20___

STATE OF New York)
)ss:
COUNTY OF Nassau)

On March 3, 2006, before me, the undersigned, personally appeared WILLIAM MASON, for C/I/mni/gng, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities and that by his/her/their signatures on the instrument, the individuals, or the person upon behalf of which the individuals acted, executed the instrument.

_____
Notary Public

LISA M. WENCHELL
NOTARY PUBLIC, State of New York
No. 01WE6040738
Qualified in Nassau County
Commission Exp September 19, 20___

Tax Map Information:

[████████████]

Page 6 of 6

Form 3173  1101 (rev. 6/01)
CMMortgage 2,3,6,11 V1

## EXHIBIT A

(1)     The Mortgage given by SUSAN DAVY AND VIRGINIA A. DAVY and dated AUGUST 25TH, 2003, in favor of CITIMORTGAGE, INC., securing the original principal amount of U.S. $67,959.08. This Mortgage is on a Fannie Mae/Freddie Mae Security Instrument and [was recorded on in the ——— of ——— Liber of as [will be recorded together with this Agreement.] (Strike and complete as appropriate.) At this date, the unpaid principal balance secured by this Mortgage is U.S. $67,959.08 [Strike if not applicable.] This mortgage secures a Note dated AUGUST 25TH, 2003

(2)     The Mortgage given by SUSAN DAVY AND VIRGINIA A. DAVY and dated MAY 21ST, 2004 in favor of CITIMORTGAGE, INC., securing the original principal amount of U.S. $150,000.00 This Mortgage is on a Fannie Mae/Freddie Mae Security Instrument and was recorded on JUNE 30TH, 2004 in the OFFICE OF THE COUNTY CLERK, NASSAU COUNTY STATE OF NEW YORK at Liber/Reel 27095 Page 308 This Mortgage secures a Note dated MAY 21ST, 2004. The Mortgage tax of $1,475.00 was duly paid.

(3)     The Mortgage given by SUSAN DAVY AND VIRGINIA A. DAVY and dated MAY 5TH, 2005 in favor of CITIMORTGAGE, INC. securing the original principal amount of U.S. $81,527.37 This Mortgage is on a Fannie Mae/Freddie Mae Security Instrument and was recorded on MAY 24TH, 2005 in the OFFICE OF THE COUNTY CLERK, NASSAU COUNTY STATE OF NEW YORK at Liber/Reel 28854 Page 653 This Mortgage secures a Note dated MAY 5TH, 2005. The Mortgage tax of $790.27 was duly paid.

(4)     The Mortgage(s) in Liber/Reel 27095 Page 308 and Liber/Reel 28854 Page 653 were consolidated by CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT dated MAY 5TH, 2005 and recorded on MAY 24TH, 2005 in Liber 28854 at Page 672 with CITIMORTGAGE, INC. to form a single lien in the amount of $230,000.00. At this date the unpaid principal balance secured by this mortgage is U.S. $229,540.93.

NEW YORK CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT-Single Family-Fannie Mae/Freddie Mae UNIFORM INSTRUMENT     Form 3172    1/01
(rev. 5/01)     (page 6 of 7 pages)

☐ (f)  This Mortgage given by

and dated                                                in favor of

securing the original principal amount of U.S. $
This Mortgage was recorded on _____ _____, State of New York, at
of _____

☐  At this date, the unpaid principal balance secured by this Mortgage is U.S.
$ _____                                 This Mortgage secures a Note dated

☐  This Mortgage was assigned to _____                    by Assignment of Mortgage dated

☐ _____ and recorded on _____                            in the
of _____                            State of New York, at _____

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1) All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which provide this Agreement loan be listed in Exhibit A to this Agreement. The language in Exhibit A is this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (b) below); and (b) the "Gap" Note (i.e., new money note discussed in (b) below).

(2) The names and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3) The Consolidated Note must be the current version of the applicable Single Family Fannie Mac/Freddie Mac Uniform Note (e.g., Forms 3XX, 3301, 3302, 3304, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit B. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly scheduled and initial payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section 1 of the Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4) The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mac/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable rider (such as an adjustable rate rider), must be attached hereto as Exhibit B. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section 2 of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mac/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section 1 of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section 1 of this Agreement should be zero. This new lien will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

Form 3172  1/01 (rev. 6/01)
ChiliLanguage 2.0.0.51 V1

# EXHIBIT "B"

09/25/2008 16:20 FAX 15162480180          NEW YORK ABS                    ☒001

## Schedule A Description

Page   1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Incorporated Village of Freeport, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at a point on the Westerly side of Delaward Avenue, along the arc of a curve bearing to the left, having a radius of 645.16 feet, a distance of 50.59 feet;

RUNNING THENCE North 87 degrees 01 minutes 40 seconds West, 105.96 feet;

RUNNING THENCE North 0 degrees 14 minutes West, 50 feet;

RUNNING THENCE South 87 degrees 01 minutes 40 seconds East, 100.69 feet, to the Westerly side of Delaware Avenue at the point or place of BEGINNING.

Said premises also known as: 89 Delaware Avenue, Freeport, New York.

# EXHIBIT "C"

## CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

August 25, 2005          Garden City          New York
[Date]                        [City]            [State]

89 DELAWARE AVE, FREEPORT, NY 11520

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 297,500.00          (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is CHL Mortgage, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First          day of each month beginning on October, 2005          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 8000 Technology Drive, O' Fallon, MO 63304
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,574.39

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for NY Consolidated Note
800N(NY) (0512)          Form 3233 1/01
VMP Mortgage Solutions (800)521-7291

Page 1 of 3

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 _____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 _____ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**19. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make this required payment. The 30-day period will begin on the date this notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     (Seal)
Susan Devey                          -Borrower

_____     (Seal)
Virginia A. Devey                    -Borrower

_____     (Seal)
Alexander Matthews                   -Borrower

*[Sign Original Only]*

Page 3 of 3

Form 3033 1/01
Cashdocpage X.X.X.51 V3

# EXHIBIT "D"

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021
Prepared By:
CitiMortgage, Inc.
100 Galleria Officentre
Ste 300
Southfield, MI 48034

[Space Above This Line For Recording Data]

## MORTGAGE MIN █████████

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated August 25, 2005
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower." Susan Davy, Subject to a Life Estate of Virginia A. Davy

whose address is 89 Delaware Ave.| Freeport, NY 11520

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." CitiMortgage, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
New York                                        . Lender's address is 1000 Technology Drive, O'
Fallon, MO 63368-2240

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

-6A(NY) (0005)
Page 1 of 17
VMP Mortgage Solutions, Inc. (800)521-7291
VHD

CitiMortgage 2.8.0.31 V1

(E) "Note." The note signed by Borrower and dated  August 25, 2005                    , will be called
the "Note." The Note states that I owe Lender  Two Hundred Ninety Seven Thousand Five Hundred

Dollars (U.S. $297,500.00                        )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by September 1, 2035
(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider     ☒ Other(s) [specify]
                                                          Schedule "A"

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."
(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a purchase), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation; or (iv) to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of all or any part of the Property by any governmental authority by eminent domain is known as
"Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.
(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

Page 2 of 13                                    Form 3033  1/01
                                                CMS Mortgage 3.0.0.31 V1

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at 89 DELAWARE AVE

FREEPORT                              [City, Town or Village], New York 11520-

This Property is in Nassau                      County. It has the following legal description: See Schedule "A" Attached Hereto And Made A Part Hereof

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

VAD

GMF-9A(NY) (0811).02                    Page 2 of 17                    Form 3033 1/01
                                                                Modengage 2.0.0.11 V1

(B) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(C) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(D) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on unapplied funds accrues as if all Periodic Payments had been paid when due, then Lender need not pay any interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

Form 3033 1/01
G2SMortgage 3A.0.52 V1

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments; such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items":

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien";

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promise and agreement" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Items amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (i) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (ii) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4.** Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease (if I am a tenant on the Property) and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Insurance is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which that notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for the review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the Interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Borrower's Initials    Page 7 of 17    Form 3033 1/01
CMMortgage 2.0,0.31 V)

that any repairs or restorations are being made. Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payment for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Borrower's Obligations to Occupy The Property. I will occupy and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restorations out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property, Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. Borrower's Loan Application. If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. Lender's Right to Protect its Rights in The Property. If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided that insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month a amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance



coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender for any entity that purchases the Note for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage Insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right: (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreement About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property (a) in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

Form 3033 1/01
CB Mortgage 3.2.6.3 V1

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has received Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me, or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. Obligations of Everyone(s) And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Form 3033 1/01
EliteMortgage 7.0.0.51 V3

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. Loan Charges. Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. Notices (Required under this Security Instrument). All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Word Usage. This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Form 3033 1/01
CMOdocqz1 2.9.0.11 VI

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19.  Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)  I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)  I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)  I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)  I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have this right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20.  Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Page 13 of 17                                                      Form 3033 1/01
                                                      GMBorrings 7.7.8.31.V1

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 21 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22, only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require this fee only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law the amount in the manner described in the Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☑ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

 Form 3033 1/01
CMMortgage (3.8.3) V1

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witness:

_____                                        _____ (Seal)
                                                                           -Borrower

_____                                        _____ (Seal)
                                                                           -Borrower
                                                            (Sign Original Only)

Form 3033 1/01
Page 18 of 17

STATE OF NEW YORK,    *Nassau*    County ss: *Suffolk*

On the *25* day of *August* before me, the undersigned, a notary public in and for said state, personally appeared

*Susan Davy & Virginia A. Davy*

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

NINFA NASON
Notary Public, State of New York
No. 01NA6060993
Qualified in Nassau County
Commission Expires April 7, 2007

Tax Map Information:

VAD    Form 8003 1/01    ORiMortgage 5.8.0.31 V1

Page 43 of 82

1 - ※ 03/22/2006 11:44 FAX                                                        ☒003/018



### Schedule A Description

Page    1

ALL that certain plot, piece or parcel of land, situate, lying and being in the Incorporated Village of Freeport, County of Nassau and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Delaware Avenue, distant 74.00 feet southerly from the corner formed by the intersection of the westerly side of Delaware Avenue with the southerly side of W. Seaman Avenue (Seaman Avenue);

RUNNING THENCE southerly, along the westerly side of Delaware Avenue, along the arc of a curve bearing to the left, having a radius of 645.16 feet, a distance of 50.89 feet;

THENCE north 87 degrees 1 minute 40 seconds west, 105.96 feet;

THENCE north 0 degrees 14 minutes west, 50 feet;

THENCE south 87 degrees 1 minute 40 seconds east, 100.69 feet, to the westerly side of Delaware Avenue at the point or place of BEGINNING.

SAID PREMISES known as 69 Delaware Avenue, Freeport, New York

RECEIVED IN
THIS CONDITION

Bk M39599 Pg189 #273
03-31-2014 @ 09:38a



NASSAU COUNTY CLERK'S OFFICE

ENDORSEMENT COVER PAGE

Recorded Date: 03-31-2014
Recorded Time: 09:38:23 a

Liber Book: M 39599
Pages From:    189
        To:    191

Control
Number:    273
Ref #:
Doc Type: M23  ASSIGN MORTGAGE

Refers to: Book: M  27095 Page: 308
           Book: M  28854 Page: 653
           Book: M  29402 Page: 431

Location:            Section Block    Lot    Unit
HEMPSTEAD (2820)     0054    00458-00 00030

                    Taxes Total           .00
                    Recording Totals      211.00
KAV001              Total Payment         211.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED.
MAUREEN O'CONNELL
County Clerk

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing,
Inc. 2100 Alt. 19 North
Palm Harbor, FL 34683

**Citi Loan No** ▮▮▮▮▮▮
**Seterus Loan No** ▮▮▮▮▮▮
**Fannie Loan No** ▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

**Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.**
**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same may have been consolidated, extended or modified, including all mortgages that have been consolidated therewith, with all interest secured thereby, all liens, and any rights due or to become due thereon to **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage is dated 05/21/2004, made by **SUSAN DAVY AND VIRGINIA A. DAVY** to CITIMORTGAGE, INC. in the principal sum of $150,000.00, and recorded on 06/30/2004 in Liber M 27095, Page 308, CRFN # 2004063002870, in the office of the Registry of NASSAU County, NY.

Property is commonly known as: 89 DELAWARE AVE,
FREEPORT, NY 11520.

See Exhibit attached for Assignments, Modifications etc. This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated this 28th day of February in the year 2014.**
**CITIMORTGAGE, INC.**

X _Cadigan_
**STEPHANIE CADIGAN**
**VICE PRESIDENT**

_Danielle Burns_
**DANIELLE BURNS**
**WITNESS**

All Authorized Signatories whose signatures appear above have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, this 28th day of February in the year 2014, the undersigned, personally appeared **Stephanie Cadigan** as VICE PRESIDENT for CITIMORTGAGE, INC., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_France M. Moss_
**FRANCE M. MOSS ~ NOTARY PUBLIC**
**COMM EXPIRES: 08/05/2016**

| France M. Moss |
|---|
| Notary Public State of Florida |
| My Commission # EE 222298 |
| Expires August 5, 2016 |

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
Property ID(S/B/L) Section: 54 Block: 458 Lot: 30
                                                                $214.00

Loan No: ██████████

## Exhibit

2nd Mortgage: SUSAN DAVY AND VIRGINIA A. DAVY TO CITIMORTGAGE, INC. DATED 05-05-2005. REC: 05-24-2005 BK M 28854 PG 653 INSTR# 2005052402134, AMT: $81,527.37

CEMA: SUSAN DAVY AND VIRGINIA A. DAVY TO CITIMORTGAGE, INC. DATED 05-05-2005. REC: 05-24-2005 BK M 28854 PG 672 INSTR# 2005052402135, COMBINED AMOUNT: $230,000.00

3rd Mortgage: SUSAN DAVY AND VIRGINIA A. DAVY TO CITIMORTGAGE, INC. DATED 08-25-2005. REC: 09-16-2005 BK M 29402 PG 431 INSTR# 2005091601424, AMT: $67,959.08

CEMA: SUSAN DAVY AND VIRGINIA A. DAVY TO CITIMORTGAGE, INC. DATED 08-25-2005. REC: 09-16-2005 BK M 29402 PG 450 INSTR# 2005091601425, COMBINED AMOUNT: $297,500.00

RE-RECORDED-CEMA: SUSAN DAVY AND VIRGINIA A. DAVY TO CITIMORTGAGE, INC. DATED 03-03-2006. NEW RECORDING DATE 03-13-2006 BK M 30202 PG 266 INSTR# 2006031301803, COMBINED AMOUNT: $297,500.00

Section 54 Block 458 Lot 30

## ASSIGNMENT OF MORTGAGE

KNOW THAT

**Federal National Mortgage Association**, a corporation, organized and existing under the laws of the United States of America, having an office at 14221 Dallas Parkway, Dallas, TX, 75254, Assignor,

in consideration of TEN AND 00/100 DOLLARS ($10.00) and other good and valuable consideration, paid by

**Nationstar Mortgage LLC d/b/a Mr. Cooper**, having an office at 8950 Cypress Waters Blvd., Coppell, TX 75019, Assignee,

Hereby assigns unto the assignee The Mortgage dated May 21, 2004 made by Susan Davy and Virginia A. Davy to CitiMortgage, Inc. in the principal sum of $150,000.00 and recorded in the Nassau County Clerk's Office on June 30, 2004 in Liber M 27095, page 308. The Gap Mortgage dated May 5, 2005 made by Susan Davy and Virginia A. Davy to CitiMortgage, Inc. in the principal sum of $81,527.37 and recorded in the Nassau County Clerk's Office on May 24, 2005 in Liber M 28854, page 653. The Consolidation, Extension & Modification Agreement dated May 5, 2005 made by Susan Davy and Virginia A. Davy to CitiMortgage, Inc. in the principal sum of $230,000.00 and recorded in the Nassau County Clerk's Office on May 24, 2005 in Liber M 28854, page 672. The Gap Mortgage dated August 25, 2005 made by Susan Davy and Virginia A. Davy to CitiMortgage, Inc. in the principal sum of $67,959.08 and recorded in the Nassau County Clerk's Office on September 16, 2005 in Liber M 29402, page 431. The Consolidation, Extension and Modification Agreement dated August 25, 2005 made by Susan Davy, to CitiMortgage, Inc. subject to a Life Estate of Virginia A. Davy, given to form a single lien in the amount of $297,500.00 and recorded in the Nassau County Clerk's Office on September 16, 2005 in Liber M 29402, page 450. The Correction consolidation, Extension and Modification Agreement dated March 3, 2006 made by Susan Davy subject to a Life Estate of Virginia A. Davy, to CitiMortgage, Inc., given to form a single lien in the amount of $297,500.00 and recorded in the Nassau County Clerk's Office on March 13, 2006 in Liber M 30202, page 266. The Mortgage was assigned by CitiMortgage, Inc. to Federal National Mortgage Association by Assignment dated February 28, 2014 and recorded in the Nassau County Clerk's Office on March 31, 2014 in Liber M 39599, page 189.

The mortgaged premises is known as 89 Delaware Avenue, Freeport, NY 11520

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

TOGETHER with the bond or note or obligation described in said mortgage, and the moneys due and to grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees" whenever the sense of this instrument so requires.

**IN WITNESS WHEREOF**, the assignor has duly executed this assignment, the ___3___ day of ___October___ in the year ___2019___.

Federal National Mortgage Association, by Nationstar Mortgage LLC d/b/a Mr. Cooper as attorney-in-fact

BY: _____

Print Name: **Omar Basped**
Title: **Vice President**

STATE OF _____**Texas**_____ )
                                               )ss
COUNTY OF _____**Dallas**_____ )

On the ___3___ day of ___October___ in the year __2019__ before me, the undersigned, a Notary Public in and for said State, personally appeared _____**Omar Basped**_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public          **Sylvia Ramirez**

SYLVIA RAMIREZ
Notary Public, State of Texas
Comm. Expires 03-07-2023
Notary ID 131921660

RECORD & RETURN TO:
Shapiro, DiCaro & Barak, LLC
175 Mile Crossing Boulevard
Rochester, New York 14624

Assignment of Mortgage                              Page 1 of 1

Exhibit "B"

6/10/19  4:47PM

| Fill in this information to identify your case: | |
| --- | --- |

| Debtor 1 | **Susan Davy-Membreno** | | |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an
amended filing

## Official Form 108
## Statement of Intention for Individuals Filing Under Chapter 7        12/15

If you are an individual filing under chapter 7, you must fill out this form if:

■ creditors have claims secured by your property, or

■ you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List Your Creditors Who Have Secured Claims

1. For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
| --- | --- | --- |
| Creditor's name: **Citimortgage, Inc**<br><br>Description of property securing debt: **89 Delaware Avenue Freeport, NY 11520  Nassau County** | ■ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: | ☐ No<br><br>■ Yes |

### Part 2:   List Your Unexpired Personal Property Leases

For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
| --- | --- |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name:<br>Description of leased Property: | ☐ No<br><br>☐ Yes |
| Lessor's name: | ☐ No |

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

6/10/19 4:47PM

Debtor 1    **Susan Davy-Membreno**          Case number (*if known*) _____

Description of leased
Property:                                                          ☐ Yes

Lessor's name:                                                    ☐ No
Description of leased
Property:                                                          ☐ Yes

Lessor's name:                                                    ☐ No
Description of leased
Property:                                                          ☐ Yes

Lessor's name:                                                    ☐ No
Description of leased
Property:                                                          ☐ Yes

Lessor's name:                                                    ☐ No
Description of leased
Property:                                                          ☐ Yes

                                                                  ☐ No

**Part 3:    Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal
property that is subject to an unexpired lease.

X  **/s/ Susan Davy-Membreno**                        X  _____
   **Susan Davy-Membreno**                                Signature of Debtor 2
   Signature of Debtor 1

   Date    **June 10, 2019**                             Date  _____

Official Form 108             **Statement of Intention for Individuals Filing Under Chapter 7**             page 2

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

# Exhibit "C"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

CITIMORTGAGE, INC.,

Plaintiff,

-against-

SUSAN DAVY, ALEXANDER MEMBRENO AND JOHN
DAVY and "John Doe" and/or "Jane Doe" # 1-10 inclusive, the
last ten names being fictitious and unknown to plaintiff, the
persons or parties intended being the tenants, occupants, persons
or corporations, if any, having or claiming an interest in or lien
upon the premises described in the complaint,

Defendants.

Index No.
Date Filed:

SUMMONS

Plaintiff designates
Nassau County as the
place of trial based on the
location of the mortgaged
premises in this action.

**We are attempting to collect a debt, and any information obtained will be used for that**

**purpose.**

To the above-named defendants:

YOU ARE HEREBY SUMMONED to answer

copy of your answer, or, if the complaint is not serve

appearance, on the plaintiff's attorneys within twenty (2

exclusive of the day of service (or within thirty (30)

summons is not personally delivered to you within the St

service of this summons if it is the United States of Amer

answer, judgment will be taken against you by default fo

RECEIPT
Printed: June 27, 2013 @ 14:57:15
NASSAU COUNTY
MAUREEN O'CONNELL
COUNTY CLERK

Trans#: 226515          Oper:AF001
SWEENEY

Ref#: IN 13--007822
Ctl#: 1691  Rec:6-27-2013 @  2:56:00p
----------------------------------------
DOC    DESCRIPTION          TRANS AMT
----------------------------------------
  1 CITIMORTGAGE INC                    )
  2 DAVY, SUSAN                         )
FORECLOSURE SUMMONS&COMPLAINT
Dept of Education              5.00    )
CULTURAL EDUCATION            14.25    )
CULTURAL ED COUNTY              .75
County Fee                    25.00
State Fee-Index              165.00
FORECLOSURE                  190.00
                            --------
       Total fees:           400.00

***  Total charges:          400.00

CHECK PM 46266               400.00

RECEIVED

JUN 27 2013

NASSAU COUNTY
COUNTY CLERK'S OFFICE

- 1 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

CITIMORTGAGE, INC.,

Plaintiff,

-against-

SUSAN DAVY, ALEXANDER MEMBRENO AND JOHN DAVY and "John Doe" and/or "Jane Doe" # 1-10 inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

Index No.
Date Filed:

SUMMONS

Plaintiff designates Nassau County as the place of trial based on the location of the mortgaged premises in this action.

**We are attempting to collect a debt, and any information obtained will be used for that purpose.**

To the above-named defendants:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York) or within (60) days after service of this summons if it is the United States of America; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

- 1 -

## NOTICE

## YOU ARE IN DANGER OF LOSING YOUR HOME

If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home. Speak to an attorney or go to the court where your case is pending for further information on how to answer the summons and protect your property. Sending a payment to your mortgage company will not stop this foreclosure action.

YOU MUST RESPOND BY SERVING A COPY OF THE ANSWER ON THE ATTORNEY FOR THE PLAINTIFF (MORTGAGE COMPANY) AND FILING THE ANSWER WITH THE COURT.

## NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT

This is an action to foreclose a mortgage lien on the premises described herein.

The object of the above captioned action is to foreclose a First Mortgage to secure $150,000.00 and interest, recorded in the Office of the County Clerk of Nassau County on June 30, 2004 in Liber 27095, Page 308; a Second Mortgage to secure $81,527.37 and interest, recorded in the Office of the County Clerk of Nassau County on May 24, 2005 in Liber 28854, Page 653; which mortgages were consolidated by Consolidation, Extension and Modification Agreement recorded in the Office of the County Clerk of Nassau County on May 24, 2005 in Liber 28854, Page 672, consolidating the First Mortgage and the Second Mortgage to form a single lien in the amount of $230,000.00 (the "Consolidated Mortgage"); and a Third Mortgage to secure $67,959.08 and interest, recorded in the Office of the County Clerk of Nassau County on September 16, 2005 in Liber 29402, Page 431; which mortgages were consolidated by Consolidation, Extension and Modification

- 2 -

Agreement recorded in the Office of the County Clerk of Nassau County on September 16, 2005 in

Liber 29402, Page 450, consolidating the First Mortgage, Second Mortgage and Third Mortgage to

form a single lien in the amount of $297,500.00 (the "Consolidated Mortgage"), covering premises

known as 89 DELAWARE AVENUE, FREEPORT, COUNTY OF NASSAU, STATE OF NEW

YORK (Section 54 Block 458 Lot 30).

The relief sought in the within action is a final judgment directing the sale of the premises

described above. The Plaintiff also seeks a deficiency judgment against the Defendants, SUSAN

DAVY AND ALEXANDER MEMBRENO, for any debt secured by said Mortgage which is not

satisfied by the proceeds of the sale of said premises, unless discharged in bankruptcy.

Dated: Rego Park, New York
    3/12, 2013

SWEENEY, GALLO, REICH & BOLZ, LLP

David A. Gallo
Attorneys for Plaintiff
95-25 Queens Boulevard, 11th Floor
Rego Park, New York 11374
(718) 459-2634

TO:    SUSAN DAVY
       89 DELAWARE AVE
       FREEPORT, NY  11520

       ALEXANDER MEMBRENO
       89 DELAWARE AVE
       FREEPORT, NY  11520

       JOHN DAVY
       89 DELAWARE AVE
       FREEPORT, NY  11520

- 3 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| CITIMORTGAGE, INC., | Index No. |
| Plaintiff, | VERIFIED COMPLAINT |
| -against- | |
| SUSAN DAVY, ALEXANDER MEMBRENO AND JOHN DAVY and "John Doe" and/or "Jane Doe" # 1-10 inclusive, the last ten names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint, | Mortgage Foreclosure |
| Defendants. | |

Plaintiff CITIMORTGAGE, INC., (hereinafter referred to as "CMI"), by its attorneys,

Sweeney, Gallo, Reich & Bolz, LLP, complains and alleges, upon information and belief, as follows:

1.     This is an action to foreclose a mortgage lien on the premises described herein.

2.     The plaintiff is the mortgagee and the holder of the subject note and mortgage and if

not the owner, has been delegated the authority to institute a mortgage foreclosure action by the

owner and holder of the subject note and mortgage.

3.     Where applicable, the plaintiff has complied with all of the provisions of the Banking

Law § 595-a and rules and regulations promulgated thereunder, Banking Law § 6-l or 6-m as

applicable to the subject loan, and RPAPL § 1304, as amended.

4.     The plaintiff, assignee or mortgage loan servicer, has timely complied with the

provisions of RPAPL § 1306.

5.     Plaintiff is, and at all times relevant herein was, a corporation authorized to conduct

business in the State of New York, with its principal place of business c/o CITIMORTGAGE, INC.,

located at 1000 TECHNOLOGY DRIVE, O'FALLON, MISSOURI.

6.    The premises, which are the subject of this action, are situated at 89 DELAWARE AVENUE, FREEPORT, COUNTY OF NASSAU, STATE OF NEW YORK (the "Premises").

7.    SUSAN DAVY is named as Defendant because she is the purported owner of record of the Premises and is obligor on a certain note secured by a mortgage on the Premises. Upon information and belief, said defendant's last known residence is at the Premises.

8.    ALEXANDER MEMBRENO is named as Defendant because he is obligor on a certain note secured by a mortgage on the Premises. Upon information and belief, said defendant's last known residence is at the Premises.

9.    JOHN DAVY is named as Defendant because he is a possible fee interest by virtue of possible outstanding interest. Upon information and belief, said defendant's last known residence is at the Premises.

10.    "John Doe" and/or "Jane Doe" # 1-10 inclusive, are fictitious and unknown to plaintiff. They are named as defendants to designate any and all tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the Premises.

11.    The following are made party defendants herein solely because they may have or claim to have a lien affecting the Premises:

N/A

The above liens are subject and subordinate to the lien of the Plaintiff's mortgage. (See, copy of Mortgage/Judgment Schedules attached hereto and made part hereof.)

12.    On or about August 25, 2005, defendants SUSAN DAVY, VIRGINIA DAVY AND ALEXANDER MEMBRENO, ("Defendants") executed and delivered to CitiMortgage, Inc. a consolidated Note (the "Note"), whereby the Defendants agreed to pay to CitiMortgage, Inc. or its transferees the sum of $297,500.00, plus increases in principal, if any, with interest thereon,

- 2 -

installments of principal and interest to be paid monthly, in substantially equal payments on the same date of each month until maturity, all as provided in the Note.

13.    As collateral security for the payment of the Note, defendants SUSAN DAVY AND VIRGINIA DAVY executed, acknowledged, and delivered to CitiMortgage, Inc. a mortgage dated May 21, 2004, in the principal amount of $150,000.00 (the "First Mortgage"), which was recorded in the Office of the County Clerk of Nassau County on June 30, 2004 in Liber 27095, Page 308, and the mortgage recording tax was duly paid.

14.    As collateral security for the payment of the Note, defendants SUSAN DAVY AND VIRGINIA DAVY executed, acknowledged, and delivered to CitiMortgage, Inc. a mortgage dated May 5, 2005, in the principal amount of $81,527.37 (the "Second Mortgage"), which was recorded in the Office of the County Clerk of Nassau County on May 24, 2005 in Liber 28854, Page 653, and the mortgage recording tax was duly paid; which mortgages were consolidated by Consolidation, Extension and Modification Agreement recorded in the Office of the County Clerk of Nassau County on May 24, 2005 in Liber 28854, Page 672, consolidating the First Mortgage and the Second Mortgage to form a single lien in the amount of $230,000.00 (the "Consolidated Mortgage").

15.    As collateral security for the payment of the Note, defendants SUSAN DAVY AND VIRGINIA DAVY executed, acknowledged, and delivered to CitiMortgage, Inc. a mortgage dated August 25, 2005, in the principal amount of $67,959.08 (the "Third Mortgage"), which was recorded in the Office of the County Clerk of Nassau County on September 16, 2005 in Liber 29402, Page 431, and the mortgage recording tax was duly paid; which mortgages were consolidated by Consolidation, Extension and Modification Agreement recorded in the Office of the County Clerk of Nassau County on September 16, 2005 in Liber 29402, Page 450, consolidating the First Mortgage,

Second Mortgage and Third Mortgage to form a single lien in the amount of $297,500.00 (the "Consolidated Mortgage").

16.    The Premises encumbered by said Mortgage, with all appurtenances thereto, is bounded and fully described in Schedule A annexed hereto and made part hereof.

17.    The Note provides, inter alia, for the payment of late charges in case of default of any installment which has become due and remained unpaid in excess of 15 days and further provides, inter alia, for the payment of all costs and expenses, including attorney's fees in the event the Note is referred to an attorney for collection.

18.    The Mortgage obligates the Defendants, inter alia, to pay, on a monthly basis, to plaintiff, at plaintiff's option, an amount equal to 1/12 of the annual taxes, assessments, ground rents, and hazard and mortgage insurance premiums to become due in connection with the Premises pursuant to the Mortgage.

19.    The Mortgage provides, inter alia, for the payment of late charges in case of default of any installment which has become due and remained unpaid in excess of 15 days.

20.    The Mortgage provides, inter alia, that in the event of a default in the payment of any principal or interest that might become due thereon, plaintiff may declare the entire indebtedness secured by the Mortgage immediately due and payable and commence an action to foreclose the Defendants' rights in the Premises and sell them pursuant to applicable law.

21.    The Note and Mortgage obligates the Defendants, inter alia, to pay plaintiff's reasonable attorney's fees in the event of a default and in any action to foreclose the Mortgage.

22.    The Defendants defaulted under the terms of the Note and Mortgage by omitting and failing to make monthly payments of principal and interest due from January 1, 2012 through date.

- 4 -

23.     As a result of the foregoing and in accordance with its rights under the Note and Mortgage, plaintiff has elected to exercise its option to demand immediate payment in full of the amounts outstanding under the Note and Mortgage and has notified the Defendants of its decision to demand immediate payment in full.

24.     As a result of the Defendants' failure to pay the obligation under the Note and Mortgage, there is now due and owing to plaintiff on the principal of the Mortgage the sum of $264,927.31 together with accrued interest from December 1, 2011 at the present rate of 4.875% as stated in the Note and Mortgage, and such other payments as are set forth in the Note and Mortgage.

25.     In order to protect its security, plaintiff may be compelled during the pendency of this action to pay sums for premiums on insurance policies, real estate taxes, assessments, water charges and sewer rents which are or may become liens on the mortgaged premises, and other charges which may be necessary for the protection of the mortgaged premises, and the plaintiff prays that any sum or sums so paid, together with interest from the date of payment, shall be added to the plaintiff's claim and be deemed secured by said Note and Mortgage and adjudged a valid lien on the mortgaged premises, and that the plaintiff be paid such sums, together with interest thereon, out of the proceeds of the sale of the mortgaged premises.

26.     The Mortgage provides that, in the case of foreclosure, the mortgaged premises may be sold in one parcel.

27.     The mortgaged premises under foreclosure herein is to be sold subject to any state of facts an accurate survey would show; and to covenants, restrictions, reservations, easements and agreements of record, if any, and any violations thereof; and to building restrictions and zoning ordinances of the town or municipality in which said mortgaged premises are situated, if any, and any violations thereof; and to conditional bills of sale, security agreements and financing statements

filed in connection with said mortgaged premises, if any, but only to the extent that any of the foregoing are not barred or foreclosed by this action; and to existing tenancies, if any, except such tenants who are parties defendants to this action; and to all unpaid real estate taxes, assessments, water charges and sewer rents, which are liens upon the premises but are not due or payable as of the time of the sale. In addition, the purchaser of the mortgaged premises at the foreclosure sale shall be required to pay all applicable local and state transfer taxes, deed stamps or other taxes due in connection with the transfer of the mortgaged premises.

28.     The plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made by reason of the payment, after the date of the commencement of this action, of any or all of the defaults mentioned herein; and such election shall continue and remain effective until the costs and disbursements of this action, and all present and future defaults under the Note and Mortgage and occurring prior to the discontinuance of this action are fully paid.

29.     In the event the plaintiff possesses any other liens against the mortgaged premises either by way of a junior mortgage or otherwise, the plaintiff requests that such other liens shall not be merged into the cause of action set forth in this complaint, but that the plaintiff shall be permitted to enforce said other liens and seek determination of the priority thereof in any independent action or proceeding including without limitation any surplus money proceeding.

30.     No prior action or proceeding has been commenced or is now pending to enforce the terms of the Mortgage, or any part thereof.

WHEREFORE, plaintiff demands judgment against the defendants as follows:

A.     That each and all of the defendants in this action, and any and all persons claiming by, through and under any of them, subsequent to the commencement of this action and the filing of the

notice of pendency of this action, may be forever barred and foreclosed of any and all right, title and interest, claim, lien and equity of redemption in the mortgage Premises;

     B.     That the Court direct that the Premises can be sold according to law, in one parcel or otherwise as equity may require;

     C.     That the monies arising from the sale of the Premises may be brought into Court or paid to the plaintiff in accordance with RPAPL§ 1354.

     D.     That the monies due to plaintiff on the Mortgage may be adjudged and computed;

     E.     That plaintiff may be paid the amount adjudged to be due on the Mortgage with interest at the time of such payment, together with any monies advanced and paid pursuant to any term or provision of the Mortgage so as to protect the lien of the Mortgage, and together with taxes, insurance premiums and all other charges and liens paid thereon with interest upon said amount from the date of the respective payments and advances, together with all amounts due by virtue of statutory costs, allowances and attorney's fees, together with any reasonable attorney's fees over and above the amounts covered by the statutory attorney's fees, together with the expenses of the sale insofar as the amount of such monies properly applicable thereto will pay the same;

     F.     That if the proceeds of the sale of the Premises are insufficient to pay the amount found due to plaintiff as set forth in the immediately preceding paragraph, the officer making the sale be required by the judgment of sale herein to specify the amount of such deficiency in the report of sale so that application may be made by plaintiff to the Court pursuant to Section 1371 of the Real Property Actions and Proceedings Law for a deficiency judgment against the defendants, SUSAN DAVY AND ALEXANDER MEMBRENO, which will include the amount of any such deficiency, unless discharged in bankruptcy;

G.    If the Court, upon such application shall so direct, plaintiff should have judgment against the defendants, SUSAN DAVY AND ALEXANDER MEMBRENO, for the amount of such deficiency, unless discharged in bankruptcy;

H.    That plaintiff be awarded reasonable attorney's fees as provided in the Note and Mortgage, as well as the costs and disbursements of this action; and

I.    That plaintiff has such other and further relief as may be just and proper.

Dated: Rego Park, New York
       3/12, 2013

                                        SWEENEY, GALLO, REICH & BOLZ, LLP


                                        David A. Gallo
                                        Attorneys for Plaintiff
                                        95-25 Queens Boulevard, 11th Floor
                                        Rego Park, New York 11374
                                        (718) 459-2634

- 8 -

**VERIFICATION**

STATE OF NEW YORK,
COUNTY OF QUEENS.

David A. Gallo, hereby affirms under the penalties of perjury and pursuant to CPLR 2106

that he/she is one of the attorneys for the plaintiff; that he/she has read the foregoing summons and

complaint and knows the contents thereof; that the same is true to his/her own knowledge except as

to matters stated to be upon information and belief, and as to those matters he/she believes them to

be true. The grounds of his/her belief as to matters not stated upon his/her knowledge are statements

and/or records provided by the plaintiff, its agents and/or employees and contained in the file in the

attorneys' office. This verification is made pursuant to CPLR Section 3020(d)(3) as the Plaintiff is

not in the county of Queens, which is where plaintiff's attorneys' office is located.

Dated: Queens, New York
_____, 2013

_____
DAVID A. GALLO, ESQ.

**SCHEDULE A**

**DESCRIPTION**

██████████████████████

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE INCORPORATED VILLAGE OF FREEPORT, COUNTY OF NASSAU AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS;

BEGINNING AT A POINT ON THE WESTERLY SIDE OF DELAWARE AVENUE DISTANT 74.09 FEET SOUTHERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE WESTERLY SIDE OF DELAWARE AVENUE WITH THE SOUTHERLY SIDE OF W.SEAMAN AVENUE (SEAMAN AVENUE);

RUNNING THENCE SOUTHERLY, ALONG THE WESTERLY SIDE OF DELAWARE AVENUE,ALONG THE ARC OF A CURVE BEARING TO THE LEFT HAVING A RADIUS OF 645.16 FEET A DISTANCE OF 50.59 FEET;

RUNNING THENCE NORTH 87 DEGREES 01 MINUTES 40 SECONDS WEST 105.96 FEET;

RUNNING THENCE NORTH 0 DEGREES 14 MINUTES WEST, 50 FEET;

RUNNING THENCE SOUTH 87 DEGREES 01 MINUTES 40 SECONDS EAST 100.69 FEET TO THE WESTERLY SIDE OF DELAWARE AVENUE AT THE POINT OR PLACE OF BEGINNING.,

SCHEDULE B
MORTGAGE SCHEDULE

███████████████

MORTGAGE BEING FORECLOSED ~

Mortgage Number 1 of 3

Mortgagor:  SUSAN DAVY & VIRGINIA DAVY
89 DELAWARE AVE.
FREEPORT, NY 11520

Mortgagee:  CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368

Amount:     $150,000.00
Dated:      05/21/2004
Recorded    06/30/2004
Liber       27095
Page        308

---

Title Company will require a written payoff statement prior to closing.

These mortgage returns, unless the mortgage is to be insured, will appear as exceptions from coverage. The information set forth herein is obtained from the recorded instrument. Sometimes the provisions of a mortgage may be modified by agreements which are not recorded.  We suggest that you communicate with the mortgagee if you desire any additional information.  If there has been a change in the owners and holders of the mortgage, such information should be furnished to us promptly to enable further searches to be made.

SCHEDULE B
MORTGAGE SCHEDULE

███████████████████

MORTGAGE BEING FORECLOSED

Mortgage Number 2 of 3

Mortgagor:   SUSAN DAVY, AS TO A FEE INTEREST AND VIRGINIA A.
DAVY, AS TO A LIFE ESTATE
89 DELAWARE AVENUE
FREEPORT, NEW YORK 11520

Mortgagee:   CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368

Amount:      $81,527.37
Dated:       05/05/2005
Recorded     04/24/2005
Liber        28854
Page         653

Agreement

**2a**

Type                Consolidation, Extension and Modification Agreement
Party of the        SUSAN DAVY AS TO A FEE INTEREST AND VIRGINIA A.
First Part          DAVY, AS TO A LIFE ESTATE 89 DELAWARE AVENUE,
                    FREEPORT, NY
Party of the        CITIMORTGAGE INC. 1000 TECHNOLOGY DRIVE, O'FALLON,
Second Part         MO 63304
Dated               05/05/2005

Title Company will require a written payoff statement prior to closing.

These mortgage returns, unless the mortgage is to be insured, will appear as exceptions from
coverage. The information set forth herein is obtained from the recorded instrument. Sometimes
the provisions of a mortgage may be modified by agreements which are not recorded. We
suggest that you communicate with the mortgagee if you desire any additional information. If
there has been a change in the owners and holders of the mortgage, such information should be
furnished to us promptly to enable further searches to be made.

Recorded      05/24/2006
Liber         28854
page          672

CONSOLIDATES MORTGAGES 1 & 2 TO FORM A SINGLE
LIEN IN THE AMOUNT OF $230,000.00

SCHEDULE B
MORTGAGE SCHEDULE

███████████████████

MORTGAGE BEING FORECLOSED

Mortgage Number **3** of **3**

Mortgagor:   **SUSAN DAVY, SUBJECT TO A LIFE ESTATE OF VIRGINIA A.
DAVY
89 DELAWARE AVE.
FREEPORT, NY 11520**

Mortgagee:   **CitiMortgage, Inc.
1000 Technology Drive
O'Fallon, MO 63368**

| | |
|---|---|
| Amount: | **$67,959.08** |
| Dated: | **08/25/2005** |
| Recorded | **09/16/2005** |
| Liber | **29402** |
| Page | **431** |

Agreement

**3a**

| | |
|---|---|
| Type | **Consolidation, Extension and Modification Agreement** |
| Party of the First Part | SUSAN DAVY, SUBJECT TO A LIFE ESTATE OF VIRGINIA A. DAVY 89 DELAWARE AVE. FREEPORT, NY 11520 |
| Party of the Second Part | CITIMORTGAGE, INC. 1000 TECHNOLOGY DRIVE, O'FALLON MO 63368 |
| Dated | 08/25/2005 |
| Recorded | 09/16/2005 |

Title Company will require a written payoff statement prior to closing.

These mortgage returns, unless the mortgage is to be insured, will appear as exceptions from
coverage. The information set forth herein is obtained from the recorded instrument. Sometimes
the provisions of a mortgage may be modified by agreements which are not recorded. We
suggest that you communicate with the mortgagee if you desire any additional information. If
there has been a change in the owners and holders of the mortgage, such information should be
furnished to us promptly to enable further searches to be made.

| | |
|---|---|
| Liber | 29402 |
| Page | 450 |

CONSOLIDATES MORTGAGES 1, 2 & 3 TO FORM A SINGLE LIEN IN THE AMOUNT OF $297,500.00

Agreement

**3b**

| | |
|---|---|
| Type | Correction of Consolidation, Extension and Modification Agreement |
| Party of the First Part | SUSAN DAVY, SUBJECT TO A LIFE ESTATE OF VIRGINIA A DAVY 89 DELAWARE AVE. FREEPORT, NY |
| Party of the Second Part | CITIMORTGAGE INC. 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368 |
| Dated | 03/03/2006 |
| Recorded | 03/13/2006 |
| Liber | 30202 |
| Page | 266 |

CORRECTS CONSOLIDATION, EXTENSION, MODIFICATION, AGREEMENT IN LIBER 29402 MP 450

Index No. 2012/

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

CITIMORTGAGE, INC.,

Plaintiff,

-against-

SUSAN DAVY, VIRGINIA DAVY, ALEXANDER MEMBRENO, et al.

Defendants

## SUMMONS AND VERIFIED COMPLAINT

Signature (Rule 130-1.1-a)

David A. Gallo, Esq.

### SWEENEY GALLO REICH & BOLZ, LLP
Attorneys for PLAINTIFF
95-25 Queens Boulevard
11th Floor
Rego Park, New York 11374
(718) 459-2634

To:

Attorney(s) for

Service of a copy of the within _____ is hereby admitted.
Dated:

Attorney's for:

Sir:-Please take notice
[ ] NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on          20
[ ] NOTICE OF SETTLEMENT
that an order          of which the within is a true copy will be presented for
settlement to the HON.          one of the judges
of the within named court, at
on          20  at          M.
Dated,

Yours, etc.
SWEENEY GALLO REICH & BOLZ, LLP
Office & P.O. Address
95-25 Queens Boulevard, 11th Floor
Rego Park, New York 11374
(718) 459-2634

# Exhibit "D"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
IN RE

SUSAN DAVY-MEMBRENO AKA SUSAN
DAVY,

DEBTOR

CHAPTER 7

CASE NO. 8-19-74214-ast

JUDGE: Alan S. Trust

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT:  89 Delaware Avenue, Freeport, NY 11520

2. LENDER NAME:  Nationstar Mortgage LLC d/b/a Mr. Cooper

3. MORTGAGE DATE:  08/25/2005

4. POST-PETITION PAYMENT ADDRESS:
   Payment Address - Nationstar Mortgage LLC d/b/a Mr. Cooper, PO Box 619094, Dallas, TX 75261

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF THE MOTION FILING DATE: $499,345.10 as of 09/05/2019
(*THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.*)

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $536,000.00

7. SOURCE OF ESTIMATED MARKET VALUE:  Debtor's Schedule D

19-083817

## STATUS OF THE DEBT AS OF THE PAYOFF DATE

8. DEBTOR(S)'S INDEBTEDNESS TO MOVANT AS OF THE PAYOFF DATE:

| | | | |
|---|---|---|---|
| A. | TOTAL: | $ | 499,345.10 |
| B. | PRINCIPAL: | $ | 264,927.31 |
| C. | INTEREST: | $ | 100,270.03 |
| D. | ESCROW (TAXES AND INSURANCE): | $ | 127,941.52 |
| E. | FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $ | 0.00 |
| F. | PRE-PETITION ATTORNEYS' FEES CHARGED TO DEBTOR(S): | $ | 0.00 |
| G. | PRE-PETITION LATE FEES CHARGED TO DEBTOR(S): | $ | 0.00 |

9. CONTRACT INTEREST RATE: 4.875%

*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:* N/A.)

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:

Fees & Costs Due (Lump Sum): $6,206.24

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE:  N/A.)*

## AMOUNT OF DEFAULT AS OF THE MOTION FILING DATE

11. DATE OF RECEIPT OF LAST PAYMENT: 02/28/2015

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: 2 PAYMENTS.

19-083817

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 7/1/19-9/1/19 | $3,877.82 per month | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |
| TOTALS | $ 11,633.46 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

14. OTHER POST-PETITION FEES CHARGED TO DEBTOR(S):

    A. TOTAL:     $_____ 0.00

    B. ATTORNEY'S FEES IN CONNECTION WITH THIS MOTION:     $_____ 0.00

    C. FILING FEE IN CONNECTION WITH THIS MOTION:     $_____ 0.00

    D. OTHER POST-PETITION ATTORNEYS' FEES:     $_____ 0.00

    E. POST-PETITION INSPECTION FEES:     $_____ 0.00

    F. POST-PETITION APPRAISAL/BROKER'S PRICE OPINION FEES:     $_____ 0.00

    G. FORCED PLACED INSURANCE EXPENDED BY MOVANT:     $_____ 0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:     $_____ 0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:  N/A

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM; STATE THE EXHIBIT NUMBER HERE: N/A.)*

19-083817

## REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY.  FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (EXHIBIT A.)

(2)    COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (EXHIBIT A.)

(3)    COPIES OF DOCUMENTS ESTABLISHING THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (EXHIBIT A.)

19-083817

## DECLARATION AS TO BUSINESS RECORDS

I, Chastity Wilson ___, THE Assistant Secretary ___ OF
Nationstar Mortgage LLC DBA Mr. Cooper, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT Lewisville, Texas ___
ON THIS __11__ DAY OF __October__, 20 _19_

Chastity Wilson
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

NAME:
TITLE:
MOVANT: Nationstar Mortgage LLC d/b/a Mr. Cooper
STREET ADDRESS: 8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE: Coppell, Texas 75019

## DECLARATION

I, Chastity Wilson ___, THE Assistant Secretary ___ OF
Nationstar Mortgage LLC DBA Mr. Cooper, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.

EXECUTED AT Lewisville, Texas ___
ON THIS __11__ DAY OF __October__, 20 _19_

Chastity Wilson
Assistant Secretary of Nationstar Mortgage LLC
d/b/a Mr. Cooper
Affiant

NAME:
TITLE:
MOVANT: Nationstar Mortgage LLC d/b/a Mr. Cooper
STREET ADDRESS: 8950 Cypress Waters Blvd
CITY, STATE AND ZIP CODE: Coppell, Texas 75019

19-083817

Exhibit "E"

6/10/19 4:47PM

**Fill in this information to identify your case:**

Debtor 1    **Susan Davy-Membreno**
_____ First Name    Middle Name    Last Name

Debtor 2
(Spouse if, filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    EASTERN DISTRICT OF NEW YORK

Case number
(if known)    _____

☐ Check if this is an
amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

| | | Column A | Column B | Column C |
|---|---|---|---|---|
| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | | Amount of claim Do not deduct the value of collateral. | Value of collateral that supports this claim | Unsecured portion If any |

| | | |
|---|---|---|
| **2.1** Citimortgage, Inc | Describe the property that secures the claim: | $415,692.00    $536,000.00    $0.00 |
| Creditor's Name | **89 Delaware Avenue Freeport, NY 11520  Nassau County** | |

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**PO Box 18340
Columbus, OH 43218**
Number, Street, City, State & Zip Code

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Date debt was incurred _____    Last 4 digits of account number _____

Add the dollar value of your entries in Column A on this page. Write that number here:    $415,692.00

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:    $415,692.00

**Part 2:    List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐

Name, Number, Street, City, State & Zip Code
**David A. Gallo & Associat
99 Powerhouse Road
Roslyn Heights, NY 11577**

On which line in Part 1 did you enter the creditor?  **2.1**

Last 4 digits of account number ___

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for Nationstar Mortgage LLC d/b/a Mr. Cooper
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000, Fax: (585) 247-7380
**Nicole DiStasio**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE | CHAPTER 7 |
| SUSAN DAVY-MEMBRENO AKA SUSAN DAVY, | CASE NO. 8-19-74214-ast |
| DEBTOR. | |

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK    )
                     )ss:
COUNTY OF MONROE     )

I, Molly Miller, being sworn, say, I am not a party to this action; I am over 18 years of age, I

reside in Rochester, New York.

On __10|14__, 2019 I served the within Notice of Motion, Affirmation in Support,

Exhibits and Proposed Order Granting Relief from the Automatic Stay upon:

TO:    Debtor
       Susan Davy-Membreno
       89 Delaware Avenue
       Freeport, NY 11520

       Co-Debtor
       Virginia Davy
       89 Delaware Avenue
       Freeport, NY 11520

       Co-Debtor
       Alexander Membreno
       89 Delaware Avenue
       Freeport, NY 11520

19-083817

Attorney for Debtor
Robert H. Solomon
24 East Park Ave, Suite 200
POB 58
Long Beach, NY 11561

Trustee
Andrew M. Thaler
Thaler Law Firm PLLC
675 Old Country Road
Westbury, NY 11590

U.S. Trustee
Long Island Federal Courthouse
560 Federal Plaza - Room 560
Central Islip, NY 11722

Toyota Motor Credit Corporation
Becket and Lee LLP, Attorneys/Agent
P.O. Box 3001
Malvern, PA 19355-0701

at the addresses designated by the foregoing individuals for that purpose by depositing a true copy

of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the

exclusive care and custody of the United States Postal Service within the State of New York.

Date October 14, 2019

Molly Miller
Bankruptcy Supervisor
Shapiro, DiCaro & Barak, LLC
Attorneys for Nationstar Mortgage LLC
d/b/a Mr. Cooper
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn to before me this
__ day of ____, 20__

Notary Public

KATRINA BELLIS
Notary Public, State of New York
No. 01BL6128572
Qualified in Monroe County
Commission Expires June 20, 20__

19-083817